IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TRICE DAWKINS**                                                                                     **PLAINTIFF**

**V.**                                **CASE NO. 4:21-CV-00380 BSM-JTK**

**KILOLO KIJAKAZI, ACTING COMMISSIONER OF**
**SOCIAL SECURITY ADMINSTRATION**[1]                              **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.   Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II.   Introduction:**

While this case has a long history, it boils down to several factors that lend support to the Administrative Law Judge's decision to deny benefits: (1) Dawkins's treatment was relatively conservative; (2) the objective evidence showed grossly normal conditions; (3) although Dawkins was routinely noncompliant with treatment recommendations, when she did comply, her conditions improved; and (4) Dawkins admitted that she had the ability to perform a variety of daily activities, including going to school full-time, and working for part of the relevant time-

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

period.

On March 22, 2010, Dawkins applied for Title II disability and disability insurance benefits and XVI supplemental security income. (Tr. at 134). She alleged that her disability began on July 13, 2009. *Id*.

The case went up and down the disability application ladder, including five hearings, multiple Appeals Council remands, and one remand from this Court. (Doc. No. 9 at 1-4). After conducting a final hearing on November 6, 2019, the ALJ denied Dawkins's applications in their entirety on January 23, 2020. (Tr. at 38). In March 2021, the Appeals Council decided that Dawkins's written exceptions did not provide a basis for overturning the ALJ's decision. (Tr. at 2110-2119, 2465). The ALJ's decision now stands as the final decision of the Commissioner, and Dawkins has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III.   **The Commissioner's Decision:**

The ALJ found that Dawkins had not engaged in substantial gainful activity since the alleged onset date of July 13, 2009.[2] (Tr. at 2128). The ALJ found, at Step Two, that Dawkins has the following severe impairments: lupus; degenerative disc disease of the cervical, thoracic, and lumbar spines; diabetes mellitus; seizure disorder; migraines; borderline personality disorder; and major depressive disorder. (Tr. at 2128); 20 C.F.R. §§ 404.1520(c) and 416.920(c).

---

[2] The relevant time-period for determination of eligibility for benefits is July 13, 2009, through the date of the ALJ's decision, which is January 23, 2020. (Tr. at 2138).

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

At Step Three, the ALJ determined that Dawkins's impairments did not meet or equal a listed impairment. (Tr. at 2129). Before proceeding to Step Four, the ALJ determined that Dawkins had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she can no more than occasionally climb ramps and stairs, and no more than occasionally crouch, crawl, bend, stoop, and kneel; (2) she can never climb ladders, ropes, or scaffolds; (3) she can never work at unprotected heights or with moving machinery, and she can never drive; (4) she is limited to unskilled, low stress/non-production work; and (5) she can never reach overhead and she cannot operate foot controls with the right lower extremity. (Tr. at 2131).

At Step Four, the ALJ found that Dawkins had no past relevant work. (Tr. at 2136). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ determined that, based on Dawkins's age, education, work experience, and RFC, there were jobs in the national economy that she could perform, such as price tag ticketer and hotel housekeeper. (Tr. at 2137). Therefore, the ALJ found that Dawkins was not disabled. (Tr. at 2138).

**IV.   Discussion:**

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into

account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

  B. Dawkins's Arguments on Appeal

Dawkins argues that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She contends that: (1) the ALJ did not properly analyze or discuss Dawkins's subjective complaints; (2) the ALJ erred in the weight that he gave to treating provider opinions; (3) the ALJ did not include all of the limitations related to Dawkins's migraine headaches in the RFC; and (4) he should have further developed the record about migraines.

As for the first argument, the Court notes that an ALJ must give full consideration to all of the evidence presented relating to subjective complaints, "including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such

4

matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

While Dawkins asserts that her impairments in combination were disabling, the record contradicts that assertion. Musculoskeletal examinations were largely normal, and objective testing showed no more than moderate problems. (Tr. at 1301-1351, 2132-2135). Dawkins's pain waxed and waned. While Dawkins claimed she used a walker, her gait was usually normal upon examination. (Tr. at 2133).

Dawkins's providers treated her conservatively, and she experienced improvement: Mobic and gabapentin helped with pain, steroid injections provided some relief, mental health medications were helpful, and Depakote (as well as over the counter ((OTC)) remedies) mitigated migraine headache symptoms.[3] (Tr. at 1308-1342, 1505-1507, 1719-1720).

At multiple points in the record, Dawkins indicated that she could perform daily activities like fix meals, do laundry, and shop in stores. (Tr. at 430-434, 741-743, 2276-2281). She testified at the 2019 hearing that she was going to college full-time and was scheduled to graduate in May 2020. (Tr. at 2276-2277). She said she had no problems being around other students. She had recently started going back to church. (Tr. at 2280-2284). These activities all undermine Dawkins' claims that she was unable to work, from both a mental and physical standpoint. *Edwards v.*

---

[3] While Dawkins spent nine days at St. Vincent's hospital in 2012 due to suicidal ideation, she improved during her stay, and was discharged in stable condition. In May 2013, her therapist noted that in spite of strong recommendations to attend twice weekly therapy, Dawkins had not been to therapy since her hospital stay. Additionally, there is evidence that Dawkins abused alcohol and drugs, including cocaine and PCP. It is not inconceivable to conclude that these substances contributed to exacerbations of her conditions.

*Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). Finally, Dawkins did work at least part-time during the relevant time-period, and an ability to work in spite of severe impairments discredits a claimant's statements that she is disabled. (Tr. at 2132). The ALJ properly considered these factors to find that Dawkins subjective complaints were not entirely consistent with the evidence as a whole.

Two of Dawkins's treating providers submitted short checkbox opinions.[4] First, in October 2011, Eric Messias, M.D., offered the opinion that Dawkins was seriously limited in her ability to perform jobs involving stressful situations and that she would have a hard time remembering things and concentrating. (Tr. at 1160-1161). Dr. Messias said that she would miss work more than four days per month due to her mental problems. *Id*. The ALJ gave Dr. Messias's opinion little weight.[5] (Tr. at 2135).

The ALJ explained why he gave the opinion little weight: Dawkins's treatment was conservative and limited, and she typically had normal mental status examinations at her doctors' appointments. (Tr. at 2135). While Dawkins did have one inpatient hospitalization and experienced some periods of serious depression, medication helped with her symptoms. Noncompliance made symptoms worse. So, the ALJ properly gave Dr. Messias's opinion little weight. Moreover, the

---

[4] See *Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018) (conclusory checkbox forms may be discounted if unsupported by medical evidence).

[5] Since Dawkins filed her applications in 2010, the old regulations for treatment of medical opinions govern (the regulations changed in 2017). *Bonnett v Kijakazi,* 859 Fed. Appx. 19 (8th Cir. 2021). The interpretation of a physician's findings is a factual matter left to the ALJ's authority. *See Mabry v. Colvin,* 815 F.3d 386, 391 (8th Cir. 2016). It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). A treating physician's opinion must be discussed by the ALJ and, if rejected, reasons are necessary. *Ingram v. Chater*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990).

ALJ *did* include the limitation to unskilled work in the RFC, indicating that he credited Dawkins's mental health problems. (Tr. at 2131).

Next, Dr. L. John Greenfield, M.D., submitted a checkbox form in 2015. (Tr. at 1761-1764). He stated that Dawkins could only perform sedentary work, with the need to sit and lie quietly, and that she would be off task more than 20% of the time. (Tr. at 1761-1764, 2135). He added that Dawkins would miss four days of work per month due to headaches. *Id*. The ALJ gave Dr. Greenfield's opinion light weight. (Tr. at 2135). The ALJ noted Dawkins's limited treatment and generally unremarkable exams. He also pointed out that Dawkins had returned to school full-time. The ALJ correctly discounted Dr. Greenfield's opinion, and found Dawkins capable of light work, with some postural limitations. (Tr. at 2131). He based the RFC on only the limitations that he found credible based on his review of the record and Dawkins's hearing testimony. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005); *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

The RFC also accounted for Dawkins's migraine headache symptoms. While Dawkins asserted that her migraines got worse over the relevant-time period, in fact, she said that Excedrin BC and Tylenol helped with headaches. (Tr. at 844, 2263-64). She had a normal brain MRI in 2011. (Tr. at 844, 865). Dawkins suffered from some seizures related to headaches, but her provider noted in 2011 that she was noncompliant with medication for those conditions. (Tr. at 1128-1132). In 2013, during a visit to UAMS, Dawkins said that Depakote helped her headaches. (Tr. at 1420-1424). Notably, in 2014, Dr. Greenfield wrote that Depakote helped with seizures and OTC meds helped with headaches. (Tr. at 1686-1692). Also, it is important to note that Dawkins did not allege disability due to her headaches. (Tr. at 123-126). Finally, she said that she stopped

7

...
...
...

working due to back and leg pain, not headaches. (Tr. at 2282).

In spite of all this, the ALJ placed restrictions on Dawkins in the RFC that accounted for her headaches, and for her seizures.[6] The RFC stated that Dawkins must not work at unprotected heights, or with moving machinery, or drive while working. (Tr. at 2131). Furthermore, the ALJ limited Dawkins to unskilled work. *Id*. The RFC incorporated all of Dawkins credible limitations. Finally, Dawkins has not shown that the ALJ should have further developed the record with respect to migraines.[7]

**V. Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly analyzed Dawkins's subjective complaints, he fully explained the weight he assigned to provider opinions, and throughout the decision, he accounted for Dawkins's migraine headaches. The finding that Dawkins was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

---

[6] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[7] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving his disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

IT IS SO ORDERED this 19th day of May, 2022.

UNITED STATES MAGISTRATE JUDGE